IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THOMAS H. WILLIAMS, SR.                                                                   PLAINTIFF

v.                                  Civil No. 07-2121

C.O. GORDON; THOMAS TRAVIS;
OFFICER DEVANE; C.O. SOSEBEE;
JIM SLAVENS, Head of Maintenance;
WILLIAM WALLACE, Maintenance; SHERIFF
FRANK ATKINSON; and JAIL ADMINISTRATOR
MIKE CONGER                                                                              DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.* While he was incarcerated at the Sebastian County Detention Center, Plaintiff maintains the Defendants failed to protect him from attack by a fellow inmate.

Defendants filed a summary judgment motion (Doc. 31). To assist Plaintiff in responding to the summary judgment motion, I propounded a questionnaire. Plaintiff failed to respond to the questionnaire and the case was dismissed (Doc. 38). On April 8, 2010, the case was reopened (Doc. 42) and Plaintiff was again directed to complete the questionnaire. This time, Plaintiff filed a timely response (Doc. 43). The summary judgment motion is now before me for the issuance of this report and recommendation.

**1.  Background**

Plaintiff was booked into the Sebastian County Detention Center (SCDC) on August 8, 2007, on charges of parole revocation, theft by threatening, an Arkansas Department of Correction (ADC) commitment hold, and a petition to revoke his suspended sentence.

*Plaintiff's Response* (Doc. 43)(hereinafter *Plff's Resp.*) at ¶ 1.  At the time of booking, Plaintiff completed a medical questionnaire and indicated no health problems other than "eyes red, blurry. Upper neck pain." *Id.* at ¶ 2

Plaintiff indicated on his intake paperwork that he had a "snitch" jacket and was afraid of, or had reservations about, being placed in general population. *Plff's Resp.* at ¶ 3(A). If he answered yes to being afraid of being placed in general population, the form told him to explain and there was a space for the explanation to be written in. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1 at pg. 7. Plaintiff left this area blank. *Id.* However, according to Plaintiff, if you check "yes" to that question the "lady at booking . . . red flags you." *Plff's Resp.* at ¶ 3(B).

Plaintiff was housed in GG Pod which is a protective custody pod. *Id.* at ¶ 4. However, Plaintiff asserts that Defendants also, in his view improperly, housed administrative segregation inmates in the same pod. *Id.* at ¶¶ 35-36.

Plaintiff requested medical care on September 22, 2007, and stated that two of his teeth were about to fall out. *Id.* at ¶ 5. Nurse Gooch treated Plaintiff on September 24th and noted that he wanted to see the dentist. *Id.* at ¶ 6. Nurse Gooch indicated Plaintiff was eligible for an ADC dental application on 09/30. *Id.* Plaintiff requested and was given Motrin. *Id.*

Plaintiff indicates Thomas Travis was on his enemy list. *Plff's Resp.* at ¶ 32. Travis was placed on administrative segregation and was to be kept separate from inmates on protective custody and from the general population. *Id.*

On September 25th, Plaintiff asserts that Travis attempted to get around Officer Sosebee to attack him. *Plff's Resp.* at ¶ 33. Sosebee pushed Travis back up against the wall. *Id.* According to Plaintiff, Sosebee and several others heard Travis threaten to kill the Plaintiff. *Id.*

Plaintiff asked that Travis be separated from him and any other protective custody inmates and was told not to worry because Travis was locked down twenty-three hours a day. *Id.* During the hour a day that Travis was out of his cell, Plaintiff was told the protective custody inmates were locked down. *Id.*

On September 26th, Officer Jerad Branham reported that he was contacted at approximately 1600 hours by Sergeant Taulbee regarding an incident in GG pod that needed to be investigated. *Plff's Resp.* at ¶ 7(A). As Branham approached the pod, Plaintiff began to tell Branham what happened and he advised Plaintiff to wait until he was briefed by his sergeant. *Id.* Taulbee advised Branham that there had been a fight in GG pod involving the Plaintiff and Travis. *Id.* at ¶ 7(B).

Branham gathered facts from Deputy Gordon who was working the pod when the fight occurred. *Plff's Resp.* at ¶ 7(B). According to Plaintiff, after Travis' hour out, when he was put back into his cell the indicator light for the cell door was red meaning the door was not secure. *Id.* at ¶ 34. Because Gordon failed to check and make sure Travis' door was secure, Plaintiff states Travis was able to attack him. *Id.*

Branham then spoke to Travis. *Plff's Resp.* at ¶ 7(C). Travis stated that Plaintiff and he had been having problems for a while and that Plaintiff had been picking on him and calling him racial slurs and spitting on his window. *Id.* Travis stated that his door had been "rigged" so he could open it when everyone else was out. *Id.* Travis stated that when he pushed his door open, he went up the stairs and began hitting Plaintiff in the face. *Id.*

Plaintiff stated that the two of them had problems since Travis was incarcerated and had been arguing for weeks. *Plff's Resp.* at ¶ 7(D). He stated this was why Travis attacked him. *Id.*

Plaintiff stated he never took a swing during the fight and that he was standing at the top of the stairs when Travis approached him. *Id.* Travis struck Plaintiff in the eye which knocked him off his feet. *Id.* Travis then started kicking Plaintiff in the face, the back of his neck, and right ear. *Id.*

Jonathan Hartman witnessed the fight and confirmed the statements made by Plaintiff and Travis. *Plff's Resp.* at ¶ 7(E). Travis was placed on administrative segregation for the remainder of his stay and Plaintiff was taken to Sparks Hospital. *Id.* at ¶ 7(F) & 9.

Plaintiff sustained a closed fracture of the orbital of the right eye. *Defts' Ex.* 5 at pg. 15. It was noted Plaintiff had swelling on the right side of his face and right eyelids. *Id.* at pg. 16. According to Plaintiff, he also had ringing in his right ear, blurred vision, and several loose teeth that had to be pulled. *Plff's Ex.* ¶ 7(G). To this day, Plaintiff indicates he still has ringing in his ears, blurred vision, and still sees flutters in his right eye. *Id.*

Travis was charged with second degree battery as a result of his attack on Plaintiff. *Plff's Resp.* at ¶ 8. When Plaintiff returned to the SCDC, Nurse Lewis placed him on a medical watch. *Id.* at ¶ 10. According to Defendants, Plaintiff was checked on hourly. *Defts' Ex.* 2 at pg. 5. Plaintiff, however, maintains he was checked on whenever they wanted to and not hourly. *Plff's Resp.* at ¶ 10 & ¶ 14.

Plaintiff complained on September 28th that his medication was not correct. *Id.* at ¶ 11. He failed to sign the form or complete the first portion of the grievance and Sergeant Ritter returned the form to Plaintiff to be filled out correctly. *Id.* He also gave Plaintiff a medical slip. *Id.*

Nurse Lewis treated Plaintiff on September 28th and noted, "Rx ordered per ER physician. Ordered per Anderson's. Rt. Eye is black, contused and swollen. Can only open eye a small amt." *Plff's Resp.* at ¶ 12.

Plaintiff's prescription for hydrocodone was filled at Anderson's and logged in the nurse's narcotics box with the medication card sent to the pod. *Defts' Ex.* 2 at pgs. 7-9. Plaintiff indicates he was not placed back in the pod and was instead placed in a four man hospital cell. *Plff's Ex.* ¶ 13. He also asserts that he was initially told that the SCDC would not pay for his medication. *Id.* at ¶ 14. Later, he was told the SCDC would pay for the medication and for a visit to a plastic surgeon. *Id.*

Plaintiff requested medical care on October 1st for ear pain, tooth pain, back and neck pain. *Plff's Resp.* at ¶ 15. He was seen by Nurse Gooch on that same day. *Defts' Ex.* 2 at pg. 10; *Plff's Resp.* at ¶ 16 (without knowledge to agree or disagree). Nurse Gooch noted that Plaintiff stated he was already on "lortab-home med. Doesn't want other pain med. Wants rt ear looked at. Checked both ears, rt ear full of wax. Lt. ear clean but he c/o ear pain bilaterally. Ear GTTS sent to pod." *Id.*

On October 1st, Plaintiff complained that he was only given one hour a day out of the cell and other inmates assigned to the hospital cell were allowed to go to other areas of the jail including protective custody. *Plff's Resp.* at ¶ 17. Jail personnel responded that Plaintiff was allowed one hour a day outside the cell and where he spent the hour depended upon how busy the jail staff were with their duties. *Defts' Ex.* 3 at pg. 3. Plaintiff believes he was not allowed to go to protective custody because Defendants did not want him to obtain witness statements. *Id.*

Plaintiff was to follow up with Dr. Kelly and on October 1st a call was made to schedule an appointment for him. *Plff's Resp.* at ¶ 18. Nurse Lewis was instructed to check later in the week since Dr. Kelly's office had to check with the doctor due to his schedule. *Id.*

Between October 1, 2007 and October 25, 2007, Plaintiff's out-of-cell activity log indicates he was regularly checked on, received an hour out of his cell, and was regularly fed his meals. *Defts' Ex.* 4. Plaintiff, does not agree that the log is accurate. *Plff's Resp.* at ¶ 19.

On October 2nd, Plaintiff asked to speak to someone about the 10/26/07[1] attack. *Plff's Resp.* at ¶ 20(A). He was told by Sgt. Taulbee that she had discussed the matter with Plaintiff previously. *Id.* Plaintiff concedes Taulbee advised him that Travis was being charged. *Id.*

Plaintiff complained on October 7th that he had not received his medication. *Plff's Resp.* at ¶ 21. He was informed that if he did not ask for his medication, then he did not get them. *Id.* According to Plaintiff, other inmates did not have to request their medication. *Id.* He also indicates there was no reason he would not want the pain medication since he had been injured in the attack. *Id.*

On October 9th, Nurse Lewis noted that Plaintiff was having problems with his right nasal sinus and was requesting something to help him not be stopped up. *Plff's Resp.* at ¶ 22. He was given Nyquil Sinus. *Id.* According to Plaintiff, his right nasal sinus cavity has not been "right" since the beating. *Id.*

Nurse Lewis reported on October 9th that she had attempted to schedule a doctor's appointment for Plaintiff with Dr. Kelley and the office was to return the call. *Defts' Ex.* 2 at pg. 14.

---

[1] Plaintiff intended to refer to the incident on September 26, 2007, when he was attacked by Travis. *Plff's Resp.* at ¶ 20(B).

AO72A
(Rev. 8/82)

On October 10th, Plaintiff was sentenced to three years at the ADC with seven years suspended and was given credit for jail time. *Plff's Resp.* at ¶ 24. Plaintiff was treated by Nurse Lewis on October 15th and complained that the Nyquil Sinus was not helping. *Id.* at ¶ 25.

On October 15th, Nurse Lewis noted that a request was made to the ADC for follow up with a plastic surgeon. *Defts' Ex.* 2 at pg. 16. However, according to Plaintiff he was told he was going to see the plastic surgeon on October 22nd but was not taken to the appointment. *Plff's Resp.* at ¶ 26 & ¶ 30. Instead, Plaintiff states he was transferred to the ADC on October 24th. *Id.* at ¶ 30; *Defts' Ex.* 1 at pg. 9. In Plaintiff's opinion, the SCDC just did not want to pay "for their mistake." *Id.* at ¶ 26.

Nurse Lewis completed the Health Services Request Form on October 15th and noted, "I/M in altercation, orbital fracture, needs to f/u with plastic surgeon. Approved?" *Plff's Resp.* at ¶ 27. On October 16th an appointment was confirmed by Nurse Lewis with Dr. Kelly and was set for October 22nd at 8:50. *Id.*

On October 18th, Plaintiff asked if Travis had been charged because of the attack. *Plff's Resp.* at ¶ 29. Jail personnel responded, "he was charged with Battery 2nd on 09/27/07." *Id.*

With respect to Officer Devane, Plaintiff was asked if Devane was present on September 25th or 26th; how he believed Devane knew Plaintiff or other inmates were in danger from Travis; and how Plaintiff believed Devane violated his federal constitutional rights. *Plff's Resp.* at ¶ 37. Plaintiff responded: "[i]f Mr. Sosebee reported the threats something like this would not of happened also ad seg has own pod not P.C." *Id.*

With respect to Jim Slavens, Plaintiff indicates he worked on Travis' cell door prior to the altercation. *Plff's Resp.* at ¶ 38. Plaintiff states Slavens reported that the cell door showed

it was not locked. *Id.* Plaintiff believes Travis should have been moved to another cell that was secure. *Id.*

With respect to Sheriff Atkinson, Plaintiff states he was in and out of the jail daily, saw a roster each day, and was notified of the trouble protective custody inmates were having with Travis. *Plff's Resp.* at ¶ 39. Although asked to do so, Plaintiff did not indicate if the Sheriff was at the jail on September 25th or 26th. *Id.*

With respect to Captain Mike Conger, Plaintiff points out Conger was in charge of the jail. *Plff's Resp.* at ¶ 40. Additionally, Plaintiff points out that Conger knew the difference between inmates on protective custody and inmates on administrative segregation and still allowed them to be housed together. *Id.*

Plaintiff's ADC medical records indicate that he entered the ADC with a "fx right eye socket and loose teeth from altercation in Sebastian Co Jail." *Plff's Resp.* at ¶ 31(A). While at the ADC, Plaintiff had four teeth extracted. *Id.*

### 2. Summary Judgment Standard

"Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *HDC Med, Inc. v. Minntech Corp.*, 474 F.3d 543, 546 (8th Cir. 2007). In ruling on a summary judgment motion, the Court cannot weigh the evidence or resolve disputed issues of fact in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"[A] disputed fact alone will not defeat summary judgment, rather there must be a genuine issue of material fact. To be material, a fact must affect the outcome of the suit under

the governing law." *Torgerson v. City of Rochester*, 2011 WL 2135636, *16 (8th Cir. June 1, 2011)(internal quotation marks and citations omitted).

### 3. Discussion

Defendants have moved for judgment as a matter of law. They maintain the factual allegations fail to establish that Gordon or Sosebee failed to protect Plaintiff from attack. Next, they maintain there was no personal involvement by Sheriff Atkinson, Conger, or Devane. Finally, they maintain the allegations against Slavens, at most, amount to negligence which cannot form the basis of liability under § 1983.

"The Eighth Amendment prohibits the government from engaging in cruel and unusual punishment, which requires that prison officials take reasonable measures to protect inmates from violence from other inmates." *Norman v. Schuetzie*, 585 F.3d 1097, 1103 (8th Cir. 2009)(citations omitted). In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the court stated:

> An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.,* 260 F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that he was deliberately indifferent to an inmate's safety. *Farmer,* 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson,* 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendant's] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference."

*Farmer,* 511 U.S. at 837.

*Riley,* 282 F.3d at 595. *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002)

Thus, to prevail on his failure to protect claim, Plaintiff must show: (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) the Defendants recklessly disregarded the risk. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

I agree with Defendants that there has been no showing that Sheriff Atkinson, Conger, or Devane were deliberately indifferent to a substantial risk of harm. In fact, the record before me does not indicate they were even aware of the potential volatile situation between Plaintiff and Travis, the threats made on September 25th, or of the possible door misfunction. Simply put, there are no genuine issues of fact as to whether they were deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Similarly, with respect to Slavens, although he did work on the cell door, there is no indication Slavens was involved in anyway in the decision of where inmates are housed, or whether Travis should remained housed in the cell after he worked on the door, or of the fact Travis had made threats to the Plaintiff or others. There is no evidence in the record suggesting the second maintenance man, William Wallace, was involved in the repair of the door, was aware of the problem with the door, or had any knowledge that Travis had threatened the Plaintiff or other inmates.

With respect to Sosebee, and Gordon, I believe there are genuine issues of material fact as to whether they were deliberately indifferent to a substantial risk of harm. Sosebee was

-10-

present on September 25th when Travis attempted to physically attack Plaintiff and stated he would kill the Plaintiff. On September 26th, Gordon is alleged to have been at the control panel showing a red light indicating that Travis' cell door was not secure. There is no indication Gordon attempted to secure the door.

With respect to Travis, he is a private individual and not subject to suit under § 1983. A Plaintiff may only bring a suit under § 1983 against a person acting under color of state law to remedy constitutional violations or violations of certain rights created by federal statute. *See e.g., Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). "The under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* (citation and internal quotation marks omitted).

### 4. Conclusion

For the reasons stated, I recommend that the motion for summary judgment (Doc. 31) be granted in part and denied in part. Specifically, I recommend the motion be granted with respect to Thomas Travis, Officer Devane, William Wallace, Sheriff Frank Atkinson, Mike Conger, and Jim Slavens. I recommend the motion be denied with respect to Deputy Gordon and Deputy Sosebee.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties**

AO72A
(Rev. 8/82)

**are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of June 2011.

/s/ *J. Marschewski*
 HON. JAMES R. MARSCHEWSKI
 CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)